**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| David Ablestein,<br><br>        Plaintiff,<br><br>        v.<br><br>Ann Veneman, Secretary, U.S. Department of Agriculture,<br><br>        Defendant. | Civil Action No. 04-910 (JAG)<br><br>OPINION |

**GREENAWAY, JR., U.S.D.J.**

      Defendant U.S. Department of Agriculture[1] moves, at the close of Plaintiff's presentation of evidence at trial, pursuant to FED. R. CIV. P. 50(a), for judgment as a matter of law as to all four of Plaintiff's remaining counts in his Complaint.[2]  This Court shall reserve its judgment as to Counts I and II which assert gender discrimination.  Counts III and IV, discussed in this opinion, shall be dismissed, pursuant to Defendant's motion, based on this Court's judgment that Plaintiff has failed to come forth with sufficient evidence such that a reasonable jury would have a legally sufficient evidentiary basis to rule in his favor.

---

    [1] Michael Chertoff, Secretary of the U.S. Department of Homeland Security, and the U.S. Department of Homeland Security are also named as Defendants.

    [2] Plaintiff has voluntarily withdrawn Count V of the Complaint.

## I. <u>FACTS</u>

In Count III of the Complaint Plaintiff, David Ablestein, alleges that Defendant and its employees regarded Plaintiff as having a mental illness which substantially limited one or more major life activities, including but not limited to, thinking, having normal social relations with others, and expressing emotions in a normal, healthy manner. (Complaint at ¶ 45.) Plaintiff also alleges, in Count IV of the Complaint, that in addition to their perception of his mental illness, or alternatively, Defendant, and its employees, regarded Plaintiff's actual, non-limiting impairment of Obsessive-Compulsive Disorder ("OCD") to substantially limit one or more major life activities, including but not limited to, thinking, having normal social relations with others, and expressing emotions in a normal, healthy manner. (<u>Id.</u> at ¶ 46.)

Plaintiff, during his presentation of the evidence at trial, has attempted to establish that Defendant's decision-makers took into account a perceived mental disability when making an adverse employment decision–his termination. On direct examination, Plaintiff established that he suffers from OCD and depression. He also testified that while some of his colleagues may have been casually informed or otherwise learned of these conditions, he did not specifically inform management of these conditions. At present, Plaintiff, during argument on Defendant's Rule 50(a) motion, has stated clearly and unequivocally that he does not rely on his OCD or depression as part of the perceived disability that is at the core of counts III and IV of the Complaint, as alleged. Instead, Plaintiff focuses on the testimony, affidavits, and depositions (the trial record) attributed to some of his work colleagues who Plaintiff argues perceived a general mental disability, not specifically identified or labeled. Additionally, there is no medical evidence in this trial record regarding a general mental disability.

## II. STANDARD OF REVIEW

Judgment as a matter of law is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury" to find in favor of the non-moving party. FED. R. CIV. P. 50(a). Thus, the district court must determine "whether, viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found for the prevailing party." Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003). Rule 50 motions should be granted "sparingly," id. at 204, and only where "the record is critically deficient of the minimum quantum of evidence" in support of the verdict. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995).

## III. ANALYSIS

The ADA provides, in pertinent part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[3] A qualified individual with a disability is a person "with a disability who,

---

[3] In the Complaint, Plaintiff pleads counts III and IV under the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. The Third Circuit has explained that substantive standards for determining an employer's liability under the Rehabilitation Act are the same as under the ADA.

"Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same. Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995). The legislative history demonstrates that the congressional committees drafting the Disabilities Act were conversant with regulations previously adopted to implement section 504 of the Rehabilitation Act. Indeed, in certain aspects the committee reports borrowed language from some of these regulations in explaining the meaning of the proposed Disabilities Act. See, e.g., H.R. Rep. No. 485(II), 101st Cong., 2d Sess. 50-52, 55 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332-34, 337; Senate Report 116, *supra* at 21, 22. Consequently, the regulations so utilized have more than usual force in providing guidance for interpretation of the Act. The Committee's use of those regulations as they applied to the Rehabilitation Act in a

with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

During oral argument on Defendant's Rule 50(a) motion Plaintiff stated that Defendant and its employees perceived Plaintiff as being mentally ill. More specifically, Plaintiff argues that Defendant and its employees regarded Plaintiff's OCD or behaviors that could be attributed to OCD, such as washing hands excessively, and/or his actual use of Paxil, prescribed to treat Plaintiff's depression, as evidence that Plaintiff suffered from mental illness or was "crazy."[4]

---

sense assimilated them as a means of understanding the Disabilities Act." McDonald v. Com. of Pa., Dept. of Public Welfare, Polk Center, 62 F.3d 92, 95 (3d Cir. 1995).

"The Rehabilitation Act provides that anyone receiving federal funds may not discriminate against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a). The Disabilities Act prohibits discrimination in employment "against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112(a). The two statutes have closely parallel definitions of disability. The Rehabilitation Act terms an individual with a disability as one who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 706(8)(B). Under the Disabilities Act, a disability is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual. 42 U.S.C. § 12102(2)." McDonald, 62 F.3d at 95.

[4] It is important to note that although this is the argument Plaintiff advanced during oral argument on the Rule 50(a) motion, no witness, at this trial, has uttered or implied by thought or action that Mr. Ablestein is mentally ill. Indeed no medical nomenclature has been used to describe Mr. Ablestein by any of the witnesses. The term "crazy" has been employed by certain witnesses as applied to behaviors Plaintiff may have engaged in during his employment. In this Court's view a reasonable jury could not conclude that there is sufficient evidence in this record to determine that Plaintiff is "crazy" as that term is understood, by lay persons, from a medical standpoint. This Court notes that most, if not all, of the witnesses called to testify stated that they did not know that Plaintiff suffered from OCD or that Plaintiff had in the past suffered from depression.

Plaintiff states that Defendant's employees perceived him as weird because, inter alia, he did not respond to on the job teasing, verbal abuse or harassment.  Additionally, employees perceived Plaintiff as different or strange because he had stated that he was celibate–comments some employees believed to be inappropriate.

Plaintiff also recites several facts that he believes support his assertion.  He states that Negron, a decision-maker, was aware that Plaintiff resided with his mother and was close to her and that she may have perceived that as strange for a man of his age.  Employees were aware that he had been bullied as a child, when he was in school.  Plaintiff points out that at one point, Negron, after the bowl incident, believed that Plaintiff was not a good fit for the agency.  Plaintiff also points out that Negron, after meeting with him only briefly during a meeting after the bowl incident, stated that she was afraid of him because of his vexed and intimidating look.

Plaintiff further argues that the decision-makers viewed his particular situation (the bowl incident, inappropriate statements regarding sexual innuendo, and an incident with two Israeli passengers arriving at customs) against the backdrop of an incident that occurred within the agency, the prior year, in Los Angeles when two employees were killed by another employee.  Plaintiff asserts that concerns about this earlier incident in Los Angeles created an atmosphere at work that inured to Plaintiff's detriment.

Piecing these incidents together, Plaintiff argues that the bowl incident was used as a pretext for terminating him based on his perceived mental illness.  This argument falls short of the mark.

In Plaintiff's Complaint, he relies primarily on OCD as the specific condition that Defendant and its employees perceived as a disabling condition limiting Plaintiff in one or more

5

major life activities. (Complaint at ¶ 46.) During oral argument on the Defendant's Rule 50(a) motion, however, Plaintiff abandons his reliance on OCD as the specific condition that Defendant and its employees relied upon in their purported determination that he was disabled within the meaning of the ADA. Rather, Plaintiff argues that Defendant's decision-makers and its employees, through misinformation and rumor, perceived Plaintiff to be "crazy" or "mentally ill" and therefore disabled within the meaning of the ADA, and that their perception of him led the employees to harass Plaintiff thus creating a hostile work environment (Count III).

Plaintiff further argues that the decision-makers, Negron, Harriger, and Vargas, learned that he was "crazy" or "mentally ill" through rumor or through their discussions with Defendant's employees, acted on this knowledge to determine that Plaintiff was disabled within the meaning of the ADA and ultimately took an adverse employment action against him–termination (Count IV). Plaintiff concedes that his only avenue for recovery on Counts III and IV is under 42. U.S.C. § 12102(2) part (C), a "perceived disability" theory of recovery.[5]

---

[5] During oral argument on Defendant's Rule 50(a) motion, Plaintiff cited two cases, Mazzarella v. United States Postal Service, 849 F. Supp. 89 (D. Mass. 1994), and Doebele v. Sprint/United Management Company, 342 F.3d 1117 (10th Cir. 2003) as authorities for this Court's consideration. In Mazzarella, the district court granted summary judgment in favor of the employer on an employee's ADA claim because the court found that Plaintiff had not been terminated because of his disability, Explosive Personality Disorder ("EPD") which substantiality limited the employee in the major life activity of working, but because of an incident that occurred while at work during which the employee was found to have been in violation of his employer's workplace conduct rules. Here, Plaintiff stated specifically that he was not arguing that he suffered from EPD as described in Mazzarella. In Doebele, the 10th Circuit Court of Appeals reversed the district court's grant of summary judgment as to the Plaintiff employee's claim that Sprint, her employer, believed that her actual mental illness (bipolar disorder) would prevent her from engaging in a broad class of jobs. The Circuit Court held that a genuine issue as to a material fact existed as to whether the employer regarded her actual disability as preventing the employee from working because she was considered a direct threat to the safety of other employees by the decision-makers in that case. This case is not apposite.

The seminal case in this Circuit is Tice v. Centre Area Transportation Authority, 247 F.3d 506 (3d Cir. 2001). In that case, the Third Circuit Court of Appeals provided guidance for the disposition of ADA claims that rely upon a "perceived disability" theory of relief. Chief Judge Becker, writing for the Third Circuit, explained:

> To state a claim for employment discrimination under the ADA, a plaintiff must demonstrate that he or she is a "qualified individual with a disability" within the meaning of the Act, and that he or she has suffered an adverse employment decision as a result of the discrimination. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Although the statute does not define the term "major life activities," the EEOC has issued regulations explaining that major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Id. at 511-12.[6]

Plaintiff argues that he is disabled within the meaning of the ADA because Defendant's employees, and one or more of the decision-makers regarded his perceived mental-illness or being "crazy" as constituting an impairment that "substantially limits" a "major life activity".

---

This Court notes that Plaintiff has offered no direct evidence that the decision-makers in this case perceived him as a direct threat to workers and thus incapable of performing a major life activity (working) based on his alleged perceived mental illness. Indeed Plaintiff's theory relies on the inference that his termination itself is evidence that the decision-makers must have thought he was "crazy" because the bowl incident and the other stated reasons for termination could not justify such adverse employment action.

[6] The Third Circuit has held that EEOC implementing regulations under the ADA are owed deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). "We ourselves have held that EEOC implementing regulations are owed 'substantial deference' under *Chevron*." (italics in original). Tice, 247 F.3d at 515, n.8.

(Complaint at ¶ 45, and oral argument on Rule 50(a) motion.)[7] Specifically, Plaintiff must argue, to succeed on this claim, that the employees and decision-makers believed he was substantially limited in his ability to think, have normal social relations with others, express emotions in a normal, healthy manner, and/or use judgment necessary to respond properly to workplace stress and other stimuli, which meant that he might be a danger to other employees.

   Plaintiff, however, has failed to demonstrate that Defendant's employees and the decision-makers regarded Plaintiff as being substantially limited in the performance of a "major life activity."[8]  Plaintiff does not allege that Defendant's employees or the decision-makers questioned Plaintiff's ability to perform "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Tice, 247 F.3d at 512.  To the contrary, the evidence Plaintiff produced during this trial demonstrates that Defendant entrusted him with responsibilities consistent with his job description, fully expected him to carry out all tasks related to his employment, and that Plaintiff met his employer's

---

[7] See also Kelley v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)("[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.") Plaintiff could not provide a reasonable retort to this proposition at oral argument.

[8] See 29 C.F.R. § 1630.2(j) for the EEOC's definition of "substantially limits". "The term substantially limits means: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. (2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."

performance expectations, as reflected in fully satisfactory employee evaluations. Thus, even if this Court were to accept Plaintiff's argument that Defendant's employees regarded him as mentally ill or "crazy", this Court could not find such a perceived status meant that he was perceived to be disabled, as defined under the ADA.

Plaintiff has not demonstrated, nor does the evidence support a conclusion, that a reasonable jury could have found that he was perceived to have a disability protected under the ADA and thus Plaintiff cannot recover under a "perceived disability" theory.

## IV. CONCLUSION

Plaintiff's perceived mental illness or the perception by Defendant's employees and the decision-makers that he (Plaintiff) was "crazy" does not qualify as a disability within the meaning of the ADA because Plaintiff has not demonstrated that his employer perceived him to be substantially limited in a major life function, as required by the ADA. Since Plaintiff's perceived mental illness does not meet the definition of disability, as defined under the ADA and the regulations promulgated thereunder, he is ineligible for relief under the ADA. Both Counts III and IV of Plaintiff's Complaint must fail. Each of those claims is dismissed, pursuant to Defendant's Rule 50(a) motion.

        S/Joseph A. Greenaway, Jr.
        JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: May 1, 2009